THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* SAMUEL LATSON, JR. *et al.,* Defendants-Appellants.

(No. 56161;

First District—May 17, 1972.

Francis E. Andrew, of Chicago, for appellants.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Daniel J. Pierce, Assistant State's Attorneys, of counsel,) for the People.

Mr. PRESIDING JUSTICE DIERINGER delivered the opinion of the court:

This is an appeal from a judgment entered by the Circuit Court of Cook County.

The defendants, Samuel Latson, Jr., and Terrance Watson, were charged with violating Section 24—1 (a) (4) of Chapter 38 of the Illinois Revised Statutes, in that they knowingly carried a concealed weapon in a vehicle. At a bench trial the defendants were found guilty and sentenced to two years' probation, the first thirty days to be served in jail.

On appeal, the defendants contend the State failed to prove either knowledge or concealment; that the court should not give any weight to the statement made by Watson implying he knew of the gun; that the court improperly limited the use of a police report to impeach a State's witness; and that the sentence was unduly harsh.

Officers Brady and Ginani stopped the defendants' car because of a broken taillight at about 1:30 A.M. on September 9, 1969, at 2201 West Warren Boulevard, Chicago, Illinois. They approached the car, one on each side, and both testified they saw an open box of shotgun shells on the seat. At the hearing on the motion to suppress, Officer Brady testified he arrested the defendants after seeing the shells on the seat and receiving no response to his request for a State Firearms Owner's Card. He testified he placed the defendants under arrest, informed them of their rights, and asked them to step out of the car. After the driver of the car, Terrance Watson, stepped out, Officer Brady stated he saw a shotgun laying on the floor of the seat with the barrel pointing toward the passenger and the trigger and stock laying on the hump on the driver's side. The top half of the weapon was visible. After recovering the shotgun the defendants were taken to the police station and read their rights again. Officer Brady testified that at the station Watson said, "If there weren't so many squad cars around, I would have come out shooting."

Watson stated there were about six squad cars at the scene at the time of the arrest. Officer Brady testified he didn't remember seeing any other squad cars parked nearby although several passed by.

The testimony at trial established the car had been borrowed by the defendants about two and one-half hours prior to their arrest, and the ownership of the weapon was not proven. At the time of the arrest the

officers could see because of the street lights, although there were no interior lights in the car.

The defendants testified they discovered the shotgun shells in the box on the floor of the front seat of the car after they started on their errand, but did not see the shotgun until Officer Brady took it out of the car.

■■■ The defendants claim that since they were arrested in a borrowed car, were not proved to either have owned or touched the gun, and denied knowing the gun was there, the evidence is wholly circumstantial and insufficient to show that either defendant knowingly carried the weapon. This claim ignores the testimony of the arresting officers, who stated the top half of the gun was visible from outside the car when the driver exited. If this testimony is believed, the defendants also must have been aware of the presence of the gun in the car, and at a bench trial it is the function of the trial court to determine the credibility of witnesses. *People v. Hyman* (1962), 24 Ill.2d 205.

The defendants contend that because the weapon was visible from outside the car by the police officer, it cannot be considered a concealed weapon within the meaning of the statute. This cannot be maintained. In *People v. Euctice* (1939), 371 Ill. 159, the court stated:

"*People v. Niemoth,* 322 Ill. 51, is not controlling here. In that case we said, among other things, that there must be proof that a firearm is carried in such a manner as to give no notice of its presence. However, in that case the defendant was in the front seat of the car and the gun was on the floor of the rear seat. The decision there was based on the fact that the gun was not in such proximity to the accused as to be within easy reach and under his control. The statute does not mean that the firearm shall be carried in such manner as to give absolutely no notice of its presence. It merely requires that the firearm shall be concealed from ordinary observation."

■■ In this case the gun was both within easy reach under the control of both defendants and was concealed from ordinary observation as it was not seen until Watson exited from the car. Ownership of a weapon need not be proven in a concealed weapons prosecution. *People v. Mc-Knight* (1968), 39 Ill.2d 577.

■■ The defendants also contend there were many material inconsistencies and contradictions in the State's testimony and the evidence is so unreasonable as to raise a reasonable doubt. They claim a police report contradicts the testimony of the officers that the box of shells was found on the seat of the car. The report made shortly after the arrest stated in part: "As case report states a shotgun and box of shells were found on front floor of car." The supplemental report states: "When the

arresting officers approached the vehicle they were able to see that the arrestees had a box of shotgun shells on the seat of the car." The original report is a short, general explanation of what occurred. That it was not explicit in the placement of both the shotgun and box of shells is not of great importance. The supplemental report, a more detailed description of the arrest, cures the ambiguity contained in the first report.

■■ The defendants speculate that it was impossible for the officers to have seen two shotgun shells balanced on the flap of the overturned box, as was their testimony, because of the slant of the seat. Other than mere assertion of such impossibility they offered no proof.

■■ The defendants next contend the admission of Watson at the police station testified to by Officer Brady deserves no weight because it was made, if at all, without a fair opportunity for explanation, was omitted from all police reports, is uncorroborated, and contradicts the State's testimony that no other squad cars were parked in the area at the time of the arrest. They assert this point is important because it is the only evidence which implies they had knowledge of the weapon in the car. However, once again they ignore the testimony of the police officers that because of the placement of the weapon, the defendants had to be aware of its presence. The alleged statement of the defendant is not an essential element of the prosecution's case.

The third point argued by the defendants is that the court erroneously limited cross-examination of Officer Brady with regard to the contents of the supplementary report, which indicated the defendants denied owning the shotgun. Officer Brady testified he had read the report and he believed it was an accurate statement of what happened, but then said he was not present when the defendants made any denials. The defense suggests this is a discrepancy and that since he adopted the report, it was error for the court to preclude them from impeaching him with it.

■■ The testimony shows that Officer Brady neither prepared the report himself nor talked to the one who did. He stated he was not present when the defendants made the denials but never excluded the possibility they were made to any other officer. The ruling of the court was correct.

■■■ Finally, the defendants suggest the sentence was too severe. The penalty for a violation of Section 24—1(a)(4) is $500.00 or imprisonment in a penal institution other than a penitentiary for not more than one year, or both. The power to reduce the punishment imposed by the trial court should be exercised with caution, and this court will not reduce a sentence unless it clearly appears the punishment is a departure from fundamental law, its spirit and purpose, or that the penalty is not pro-

portioned to the nature of the offense. (*People v. Taylor* (1965), 33 Ill.2d 417; *People v. Ramey* (1969), 115 Ill.App.2d 431.) The sentence rendered in this case is well within the statutory limitation and does not violate the standards set forth above.

For these reasons the judgment of the Circuit Court of Cook County is affirmed.

Judgment affirmed.

BURMAN and ADESKO, JJ., concur.